## Appeal of H. S. Thompson et al.

---

## Estate of Richard Silverthorne, Deceased.

A bequest to A., of all the balance of testator's estate, real and personal, whatsoever, "for which bequest I order that he, the said A., pay all my just debts, funeral expenses," etc., creates a charge for the payment of testator's debts upon the land in the hands of A.

Such a devise is an estate upon condition of paying the debts; and the title of the devisee does not become absolute until the performance of the condition.

In order to continue the lien of debts upon the estate, under such a de-

---

Cited in Woonsocket Inst. for Sav. v. Ballou, 16 R. I. 351, 1 L. R. A. 555, 16 Atl. 144, holding that the debts of decedent were made a direct charge upon devised real estate by the terms of the devise.

NOTE.—The debts of a decedent, not of record, were a lien upon his real estate for a period of five years from the time of death.  By the act of February 24, 1834, the land was released, if an action be not instituted within that period.  Ferguson v. Yard, 164 Pa. 586, 30 Atl. 517; Hunt's Appeal, 105 Pa. 128; Oliver's Appeal, 101 Pa. 299.  This limit of time for instituting the action was reduced to two years by the act of June 8, 1893, P. L. 392, and must be duly prosecuted to judgment.  When debts are thus barred, the fact that they are charged upon the land does not change the rule, as held in THOMPSON'S APPEAL (Mitchell's Estate, 182 Pa. 530, 38 Atl. 489; Miller's Appeal, 60 Pa. 404), unless an active trust for their payment is created by the will (Seitzinger's Estate, 170 Pa. 531, 32 Atl. 1101); or unless there is a conversion of the realty into personalty under the will (McWilliam's Appeal, 117 Pa. 111, 11 Atl. 383).

-vise in the will, the creditors must proceed to sue and obtain judgment before the debt is barred by the act of February 24, 1834, limiting the lien to five years.

(Argued May 25, 1887. Decided October 3, 1887.)

July Term, 1887, Nos. 47, 48, E. D., before MERCUR, Ch. J. GORDON, TRUNKEY, STERRETT, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Huntingdon County on exceptions to the report of an auditor in the matter of the distribution of the assets of the estate of Richard Silverthorne, deceased. Affirmed.

The following facts were found by the auditor, Jere B. Rex, Esq.:

The fund for distribution is made up of a balance of the personal assets of the decedent and the purchase money of a portion of the decedent's real estate sold by order of court to Charles L. Hockenberry. Upon this fund three classes of creditors are claimants, the lien creditors of the decedent, the general creditors or those whose claims are not liens upon his real estate, and the lien creditors of Charles Silverthorne, devisee under the will of his father.

Richard Silverthorne, the testator, died on the 5th day of April, 1879, after having made his last will and testament, dated the 10th day of April, 1876, to which he added a codicil dated the 18th day of October, 1877. He appointed as his executors Robert McNeal, J. C. Crawford, and his son Charles Silverthorne. The first-named executor, after letters testamentary had been granted, was discharged upon his petition presented to your honorable court. For several years Charles Silverthorne alone conducted the settling up of the estate, but subsequently J. C. Crawford took an active part also. Two accounts were filed on the 2d day of February, 1886; one, as the "First account of Charles Silverthorne, acting executor of the last will and testament of Richard Silverthorne, etc.," and the other, as the "Account of J. C. Crawford and Chas. Silverthorne, executors of Richard Silverthorne, etc.," They were both presented for confirmation nisi on the 14th day of April, 1886, and no exceptions being filed they were confirmed absolutely on the 20th day of April, 1886. The account of Charles Silverthorne, "acting executor, etc.," shows no funds in his

hands; the account of "J. C. Crawford and Charles Silver-thorne, executors, etc.," exhibits the cash balance now in their hands for distribution, and the unpaid purchase moneys of the real estate sold to Chas. L. Hockenberry, which they also desire distributed to creditors.

The first provision of Richard Silverthorne's will is: "I will that all my just debts and funeral expenses be paid by my son Charles as shall be hereafter set forth."

After certain bequests of personal property to the widow, and a life interest in certain real estate possessed by the testator at the time of his death, and other devises of real estate to his sons John and William, the will contains the following devise to Charles Silverthorne: "And to my son Charles I give and be-queath all the balance of my estate real and personal, with all accounts and moneys due, life insurance policy, and all manner and kinds of property whatsoever, for which bequest I order that he, the said Charles, pay all my just debts, funeral expenses and the charges of settling up my estate." By the codicil to the will, the interest in the real estate bequeathed to his son John is di-rected to go to Charles Silverthorne in the event of his (John's) death before the death of the testator. John died before his father and his interest vested in his brother Charles.

On the 16th day of September, 1885, J. C. Crawford and Charles Silverthorne presented their petition to your honorable court setting forth that the balance of the personal fund of Rich-ard Silverthorne's estate remaining in their hands was insuffi-cient to pay the debts yet owing by the estate, and praying an or-der for the sale of a portion of the real estate devised to Charles Silverthorne for the payments of the debts of the decedent. An order of sale was granted, and the real estate set forth in the pe-tition was sold to Charles L. Hockenberry for $2,900, which sale was duly confirmed on the 14th day of December, 1885. Of this sum $975 have been paid to the executors, $975 will be due on the 14th day of December, 1886, and $975 on the 14th day of December, 1887. The fund for distribution is consequently made up in part of cash from the sale of personal property, cash from the sale of real estate, and in part of the unpaid purchase money of real estate.

The auditor decided that the debts of the decedent were not made a charge by the will upon the estate devised to his son, Charles Silverthorne, and made distribution accordingly.

The general creditors filed objections to this ruling.

After hearing the argument upon exceptions to the auditor's report, the court, FURST, P. J., filed the following opinion:

The vital question in this case is: Were the debts of the decedent made a charge by his will upon the estate devised to his son, Charles Silverthorne? This question was decided by the auditor in the negative.

The testator in the first clause of his will declares: "I will that all my just debts and funeral expenses be paid by my son Charles as shall be after set forth." He then bequeaths to his widow certain "household and kitchen furniture"—and also several pieces of land. To his sons John and William he devises a saw mill, with certain timber, and also a tract of land, directing them to pay an annuity of $25 annually to their mother, etc. Then follows this devise: "And to my son Charles I give and bequeath all the balance of my estate, real and personal, with all accounts and moneys due, life insurance policy, and all manner and kind of property whatsoever, for which bequest I order that he, the said Charles, pay all my just debts, funeral expenses, and the charges of settling up my estate. . . . And further should the life policy herein mentioned for any cause not be made available, then I order that the tract of flint land, and the mountain tract in connection with it be sold, and the proceeds applied to the payment of the debts." In a subsequent clause he appointed Charles one of his executors.

The policy of insurance was paid to Charles, and therefore the clause directing the sale of the tract of land above referred to became inoperative.

It will thus appear that the question involved arises upon the true construction of the residuary clause in the will. In his will he first directs the payment of his debts, by his son Charles, who is the residuary legatee, devisee and one of the executors. After making certain specific bequests and devises, the testator blends his real and personal estate, into one common fund, in a residuary devise to his son Charles, for which bequest he orders and directs him to pay his debts, funeral expenses, etc.

Does this create a charge upon the estate devised to Charles? That it created a personal charge, upon the acceptance of the devise by Charles, is of course admitted, but it is denied by the individual creditors of Charles that it created any charge upon

the land sold by the executors of Richard Silverthorne, for the payment of debts. The lands sold are those included in this residuary devise. The contest is between the general creditors of Richard Silverthorne and the judgment creditors of Charles.

To determine the question involved we must ascertain the intention of the testator. It is his intent as expressed in the will, either by express words, or necessary implication, which must govern and control our judgment.

It has been held, by our supreme court, in many adjudged cases, that in order to charge lands devised with the payment of a legacy or debts it must appear by direct expression or plain implication, that such was the intention of the testator to be gathered or inferred from the whole will. We will only refer to Brandt's Appeal, 8 Watts, 198; Mellon's Appeal, 46 Pa. 165; Okeson's Appeal, 59 Pa. 99; English v. Harvey, 2 Rawle, 305; and Montgomery v. M'Elroy, 3 Watts & S. 371, 38 Am. Dec. 771.

The residuary devise in this case, after first directing the payment of testator's debts, contains these important words, for this bequest, etc., he is to pay all my debts. It will be noticed that this is not separate and distinct from the devise, but it is part and parcel of the same sentence. In other words it is the consideration for the devise. It has the same signification, as if the testator said: In consideration that Charles pay my debts, I devise to him the residue of my estate, real and personal. It thus becomes the condition upon which he holds the bequest and devise. It is an estate upon condition. The title of the devise becomes absolute upon the performance of the condition, and not until then. It is a charge upon the title which is sufficient notice to all the world.

As in articles of agreement for the sale of land, the purchase money which is the consideration for the conveyance is a lien upon the title until paid. The vendee can only compel conveyance of the full legal title, upon discharging the purchase money.

The principle is the same where the title is conveyed by will, subject to like condition. The donee cannot hold the benefit and refuse to comply with the condition upon which the devise was made. The land only belongs to the donee when he performs the conditions of the devise.

In Hoover v. Hoover, 5 Pa. 351, it is held that both the estate and the person of the devisee of land charged with legacies,

become liable therefor by an acceptance of the devise. In the opinion of the court, p. 355, Mr. Justice BELL says he who accepts a benefit under a will must conform to all its provisions and renounce every right inconsistent with them.

On the same page he refers to the opinion of Mr. Justice KENNEDY in Lobach's Case, 6 Watts, 167, and quotes Justice KENNEDY as saying: "The testator not only intended to charge the land but to make it a personal charge on the devisee; and he became personally liable, on taking possession under the will. These distinct liabilities are illustrated by the consideration that the estate given to David may be treated as an estate on condition. In a will no precise form of words is necessary to create a condition."

Any expressions, denoting such an intention, will have that effect. Thus a devise to A, he paying or me to pay $500, in one year after my decease, would, it is said, be in a condition for the breach of which the heir might enter. 2 Powell, Devises, 251; Barnardiston v. Fane, 2 Vern. 366.

In Nichols v. Postlethwaite, 2 Dall. 131, 1 L. ed. 319, John Davis, the testator, bequeathed several pecuniary legacies. Then he devised as follows: All the rest and residue of his estate, real and personal, he gave to his son, whom he appoints executor, and who after testator's death entered into possession. Testator had no personal estate. It was held by the court that nothing was given to the residuary devisee but what remained after payment of the legacies. These are a charge upon the testator's real estate.

In the case before us, we have first the mingling of the realty and personalty in a gift of the residue of the testator's estate. After he has directed the payment of his debts we have further the express declaration of the testator, that for this bequest the debts are to be paid by the residuary devisee, clearly showing that the intent of the testator was to give all the residue of the estate to Charles upon condition that he would pay his debts. In this devise there was also embraced a policy of insurance upon the life of the testator. In order that his son Charles might have an ample fund out of which to pay the debts, the testator provided that if Charles failed to receive the money due under the policy, certain real estate was devised to him, which he was to sell, to raise a fund with which to pay his debts. Under this devise if the debts are not expressly charged, can there

VOL. VII.—SAD. REP. 15

be any doubt, that they are charged by implication? That the testator devised this fund to Charles, for this express purpose, and that he should hold the same upon that condition?

Taking the entire devise into consideration, as well as all the other parts of the will, relating to his debts, we have no difficulty in coming to the conclusion that Richard Silverthorne intended to make his debts a charge upon the residuary estate devised to his son Charles.

Under a residuary clause, less forcible and clear, Chief Justice SHIPPEN held that a charge on the land was thereby created. Tucker v. Hassenclever, 3 Yeates, 294.

This case is so strong upon this principle that we might here stop. We will cite but a few other cases which affirm the same doctrine. Bank v. Donaldson, 7 Watts & S. 407; Mellon's Appeal, 46 Pa. 165.

Mr. Justice STRONG, p. 175, delivering the opinion of the court says: "Certainly a mingling of the real and personal estate in a gift of the residue of a testator's property does with us imply an intent to charge the land, either by itself or in aid of the personalty, with the payment of general pecuniary legacies. Such an implication is necessary to enable the whole will to take effect and all the legacies to be paid." The rule obtains as well in the payment of debts, for the same reason that the personal fund is the one designated by law for the payment of debts.

In Re Tower, 9 Watts & S. 103, 42 Am. Dec. 319, the language of the devise was: "To my nephew, Jeremiah Tower, I give and bequeath all my estate, real and personal, he paying the legacies hereinafter stated." GIBSON, Ch. J., held the legacies a charge upon the land. See also Gilbert's Appeal, 85 Pa. 347, and McFait's Appeal, 8 Pa. 290.

Where a testator by his will blends his real and personal estate, he thereby charges his lands with the payment of legacies. M'Lanahan v. Wyant, 1 Penr. & W. 96, 21 Am. Dec. 363.

The case of Trinity Church v. Watson, 50 Pa. 518, and Walter's Appeal, 95 Pa. 305, are not in conflict with the cases referred to.

In Trinity Church v. Watson, it was held that a general charge on real estate by devise for the payment of debts does not create a testamentary lien of unlimited duration, subject only to the presumption of payment by lapse of time.

In order to continue the lien of debts upon the estate, under such a general devise in the will, the creditors must proceed to sue and obtain judgment before the debt is barred by the statute of 1834 limiting their lien to five years.

Walter's Appeal, 95 Pa. 305, only decides that a bare direction by a testator to devisees to pay money is nothing more than a personal obligation of the devisees. A charge upon the land is not thereby created. Where debts are made a charge upon the real estate by the will of the testator, a trust is created for the benefit of his creditors; and there is no limitation to the lien of such debts as regards such real estate, except only the limitation which may arise from presumption of payment by lapse of time. Steel v. Henry, 9 Watts, 523.

We are therefore led by the authorities cited, and the principles enunciated by text writers upon this branch of the law, to hold that the debts of Richard Silverthorne were, under the residuary clause of his will, charged upon the estate therein devised to his son Charles; and hence they must first be paid, before any part of the fund in court can be distributed to the creditors of Charles. This determination of the question renders unnecessary the consideration of the other exceptions.

It may be proper, however, to state that the auditor erred in the method of distribution of the fund arising from the personal estate. This fund must be distributed *pro rata* among all the creditors of Richard Silverthorne—the real-estate fund to the liens according to their priority. The order of payment and distribution laid down in Hoover v. Hoover, 5 Pa. 356, should be observed. If any other method of distribution of the personal fund will reach the same result, with less complication, it can be adopted; if not, the rule indicated must be followed.

The question involved in the exception, that the auditor erred in holding that a judgment obtained against Richard Silverthorne in his lifetime, but which had not been revived since his death, within the proper time, lost its lien, and must be postponed to judgment creditors of Charles, is now immaterial, and unnecessary to decide. It is only important as between judgment creditors of Richard in his lifetime, and in that case priority of lien must be observed. The case referred to by the auditor, Jack v. Jones, 5 Whart. 321, was decided under the act of 1798, and not under the act of February 24, 1834, which

has made material changes in the law. As we do not decide the question, we will not discuss it.

The report of the auditor is reversed, and the same is referred back to him to make distribution according to the principles herein stated.

The account was restated in accordance with this ruling and a decree entered accordingly, from which H. S. Thompson and J. M. Blair, lien creditors of Charles Silverthorne, took this appeal, assigning as error the action of the court in the construction of the will and in sustaining the exceptions to the report of the auditor.

*W. H. & J. S. Woods,* for appellants.—To make debts a direct charge upon the land of the decedent the language of the will must be not only positive, but precise and clear. Debts are never a charge by implication; legacies may be. Agnew v. Fetterman, 4 Pa. 62, 45 Am. Dec. 671; Hepburn v. Snyder, 3 Pa. St. 78.

A bare direction by a testator to devisees to pay money is nothing more than a personal obligation of the devisees. Walter's Appeal, 95 Pa. 305; Cable's Appeal, 91 Pa. 327.

A direction to pay debts, coupled with a power to sell for that purpose, does not prevent the running of the statute of limitations. Agnew v. Fetterman, 4 Pa. 56, 61, 45 Am. Dec. 671; Trinity Church v. Watson, 50 Pa. 518.

If the debts were not a direct charge upon the land, the court below was clearly in error.

But if the testator by his will made his debts a direct charge upon the land devised to his son Charles, would that prevent the running of the statute of limitations and the act of 1834 against these claims, no suit for the recovery of the same having been brought within the statutory period?

By the act of 1834 no debts of a decedent, except those secured by mortgages or judgments, shall remain a lien on his real estate longer than five years after his death, unless an action for their recovery be commenced and duly prosecuted within that period. This act did not create a lien; it was an act limiting the duration of the lien of debts, which before the act of 1794 were indefinite. It was an act of repose, and its purpose was intended "to prevent the mischief which springs from liens of

unlimited duration." We infused into the act of 1797 for limiting the lien of decedent's debts, principles borrowed from the act of 1798 for limiting the lien of judgments. Fetterman v. Murphy, 4 Watts, 429, 28 Am. Dec. 729.

In Kauffelt v. Bower, 7 Serg. & R. 64, Gibson, J. said: "The legislature has uniformly discouraged every other lien or encumbrance than those which arise from transactions which appear of record, and which therefore can prejudice no one who uses proper diligence to ascertain the state of the facts; and even when liens are permitted, it has been thought that the state of property, as well as the habits of the people, required them to be laid under severe limitations and restrictions."

"Great injustice as well as inconvenience must ever result from secret liens being permitted to continue without limitation under any circumstances whatever. . . . If seven years is not to be a bar to a proceeding against the lands of deceased debtors to obtain payment of the debts, where nothing was done within that period to continue the lien as required by the act, when will it be prudent to trust the heir or devisee, on account of his being the owner and possessor of lands by inheritance or last will?" Kerper v. Hoch, 1 Watts, 13. See also Maus v. Hummel, 11 Pa. 228.

The learned judge below relied upon Steel v. Henry, 9 Watts, 523, to sustain his position.

The facts in that case are entirely different from the facts in this. Henry brought his action against the executors of James Steel within one year after testator's death and obtained judgment. His debts then became a debt of record.

In Trinity Church v. Watson, 50 Pa. 518, Watson & Patterson had a debt against the testator but no suit had been brought to recover it within the period of five years after the death of the testator. The single question before the court was: Had this claim of Watson & Patterson lost its lien upon the New Castle lot? The court below, relying on the authority of Alexander v. M'Murry, 8 Watts, 504, and Steel v. Henry, decided that it had not.

In Sample v. Barr, 25 Pa. 459, a case where the devise was of that part of testator's land which should remain after payment of his debts, it was held that the debt must be established and in the mode pointed out by the act of 1834, and that if the creditor means to enforce his lien, if he intends to charge the

real estate, he shall bring in the widow and heirs and for what? Not to contest his lien, but his debt; and if he does not do so, he has no right to pursue the decedent's real estate, "but to assume the existence of the debt, which the statute says shall be proved, and then to argue that the will devised only what remained after payment of debts is to sacrifice the statute to a *petitio principii.*"

If Charles Silverthorne had sold the real estate devised to him by his father, it cannot be questioned, under the act of 1834, that the judgments of Jones & Burdge and of James Coulter would not have continued a lien on said real estate in the hands of the purchaser, unless they had been revived by scire facias. If that is so, do they not lose their lien as against the judgment creditors of Charles? Are not the judgment creditors of the heir or devisee entitled to the same protection under the act as is a purchaser?

In Bank of North America v. Fitzsimons, 3 Binn. 361, speaking of a purchaser and a judgment creditor this court says: "Is not the one as much a purchaser as the other?"

In Fryhoffer v. Busby, 17 Serg. & R. 121, it was held that the lien of a judgment not revived expires on the termination of the five years established by the limitation act of 1798, as against another judgment creditor, notwithstanding the death of the debtor before the end of the five years. See also Jack v. Jones, 5 Whart. 321.

This case is also referred to and approved in Konigmaker v. Brown, 14 Pa. 273.

*A. J. Patterson, J. M. Bailey, W. M. Williamson,* and *D. Caldwell,* for appellees.—If Richard Silverthorne could charge his real estate with the payment of his debts he did so.

In Newman v. Johnson, 1 Vern. 45, where the testator said: "My debts and legacies being first deducted, I devise all my estate, both real and personal, to J. S.," it was held to charge the real estate.

In Bowdler v. Smith, Prec. in Ch. 264, where a testator devised "as to my temporal estate wherewith God hath blessed me I give and dispose thereof as followeth: First, I will that all my debts be justly paid which I shall at my death owe, . . . also I devise all my estate in G. to A.," and this was all the real

estate testator had, it was held that the will charged it with the debts.

In Trott v. Vernon, 2 Vern. 708: *"Imprimis,* I will and devise that all my debts, legacies, and funeral expenses shall be paid and satisfied in the first place."

In Harris v. Ingledew, 3 P. Wms. 91: "As to my worldly estate, my debts being first satisfied, I devise the same as follows." In these cases it was held that the debts were charged upon the real estate.

Where the executor is devisee of real estate, a direction even to him to pay debts will charge the real estate. 3 Jarman, Wills, p. 416.

A devise to A of all testator's real and personal property, "he paying debts and legacies," makes them a charge. West Branch Bank v. Donaldson, 7 Watts & S. 407; *Re* Tower, 9 Watts & S. 103; Baylor v. DeJarnette, 13 Gratt. 152; Little v. Hager, 67 N. C. 135.

A devise to A, "he paying" testator's debts out of the estate given to him, creates a charge. Gardner v. Gardner, 3 Mason, 178, Fed. Cas. No. 5,227.

A devise "in consideration of the devise to A, I order him to pay my debts," etc., creates a charge. Hoover v. Hoover, 5 Pa. 351. See also Sands v. Champlin, 1 Story, 376, Fed. Cas. No. 12,303.

Where the whole estate is given to W, "who in consideration thereof" is to pay, etc., a charge is created. Hill v. Huston, 15 Gratt. 350.

So, too, where the estate is given "upon condition of payment," etc. Bugbee v. Sargent, 23 Me. 269.

Courts of equity have always been desirous of sustaining charges by implication for payment of debts and the presumption in favor of them is not to be repelled by anything short of clear and manifest evidence (from the will) of a contrary intention. It has therefore been established, as a general rule, that a direction by a testator that his debts shall be paid charges them by implication on his real estate either as against his heir at law or devisee. Downman v. Rust, 6 Rand. (Va.) 587.

PER CURIAM:

The very able opinion of the learned judge of the court below

so fully disposes of this case as to render a further discussion of it unnecessary.

The appeals are dismissed and the decree affirmed, at the costs of the appellants.